UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 05-CIV-21113-JORDAN/BROWN

SLIP-N-SLIDE RECORDS, INC.,

    Plaintiff,
v.

TEEVEE TOONS, INC. d/b/a
TVT RECORDS

    Defendant.
_____/

TEEVEE TOONS, INC.

    Counterclaimant,
v.

SLIP-N-SLIDE RECORDS, INC.,
RUDEBWOY ENTERTAINMENT,
INC., 305 MUSIC, INC., and DOES 1-20,
inclusive,

    Counter-Defendants.
_____/

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WOLFE & GOLDSTEIN, P.A.
Counsel for Plaintiffs/Counterdefendants
100 S.E. Second Street, Suite 3300
Miami, Florida 33131
Telephone: (305) 381-7115
Facsimile: (305) 381-7116

DAVID M. ROGERO P.A.
Co-Counsel for Plaintiffs/Counterdefendants
2600 Douglas Road, Suite 600
Coral Gables, Florida 331346100
Phone: (305) 441-0200
Fax: (305) 460-4099

## TABLE OF CONTENTS

|   | Page |
|---|---|
| OVERVIEW | 1 |
| TVT HAS NO LEGITIMATE PROTECTIBLE RIGHTS IN PEREZ'S MARK "PITBULL" | 2 |
| TVT CANNOT PROPERLY CLAIM IT IS ENTITLED TO A QUALIFIED PRIVILEGE WHICH EXCUSES ITS TORTIOUS CONDUCT | 5 |
| TVT ACTED WITH MALICE OR BY IMPROPER MEANS AND CANNOT CLAIM QUALIFIED PRIVILEGE | 7 |
| THIS COURT SHOULD NOT DELAY RULING ON THE MOTION UNDER RULE 56(f) BECAUSE PLAINTIFFS HAVE FULLY COMPLIED WITH ALL DISCOVERY REQUESTS PROPOUNDED BY DEFENDANT | 10 |
| CONCLUSION | 11 |

## TABLE OF AUTHORITIES

   Page

**Cases**

| | |
|---|---|
| Bell v. Streetwise, 640 F.Supp. (D. Mass. 1986) | 3 |
| Ethyl Corp. v. Balter, 386 So.2d (Fla. 3rd DCA 1980) | 5 |
| In Re Hester Industries, Inc., 231 USPQ 881 (TTAB 1986) | 4 |
| In Re Melville Corp., 18 USPQ2d 1386 (TTAB 1991) | 4 |
| In Re Polar Music International AB, 714 F.2d 221 USPQ 315 (Fed. Cir. 1983) | 3 |
| In Re Pollio Dairy Products Corp., 8 USPQ2d 2012 (TTAB 1988) | 4 |
| In Re Spirer, 225 USPQ (TTAB 1985) | 3 |
| KMS Restaurant v. Wendy's Intl., 361 F.3d. (11th Cir. 2004) | 8, 9 |
| Marshack v. Greene, 746 F.2d (2nd Cir. 1984) | 3 |
| McCurdy v. J.C. Collis, 508 So.2d 380 (Fla. 1st DCA 1987) | 7, 8, 10 |
| Rick v. Buchansky, 609 F.Supp. (S.D.N.Y. 1985) | 3 |
| Seminole Tribe v. Times Publishing, 780 So.2d (Fla. 4th DCA 2001) | 5 |
| Snook v. Trust Co., 859 F.2d (11th Cir. 1988) | 11 |
| Sunnen Products Co. v. Sunex International Inc., 1 USPQ2d 1744 (TTAB 1987) | 4 |
| Universal City Studios Inc. v. Nintendo Co., 797 F.2d (2nd Cir. 1986) | 10 |
| Yoder v. Shell Oil, 405 So.2d (2nd DCA 1981) | 7 |

**Other**

| | |
|---|---|
| Standard Jury Instruction M.7.1, 475 So.2d 682, 690 (Fla. 1985) | 6, 7, 8 |
| Jury Instruction M.7.2 | 6, 7, 8 |

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

Plaintiff, Slip-N-Slide Records ("SNS") replies to Defendant, Teevee Toons, Inc.'s ("TVT") Opposition to Plaintiff's Motion for Partial Summary Judgment and states as follows:

## OVERVIEW

TVT asserts the same arguments which it unsuccessfully raised in opposition to Plaintiff's Motion for Temporary Injunction, even though the same issues are raised in the underlying motion. TVT does not allege any material facts are in controversy. Thus, for the reasons Magistrate Judge Steven Brown rejected those arguments and based upon the authorities cited herein, Plaintiff is entitled to the entry of an Order granting its Motion for Partial Summary Judgment as a matter of law.

Plaintiff's sole count is tortious interference with its advantageous business relationship that it had established with its distributor, Alternative Distribution Alliance ("ADA"). TVT admits that it knowingly and intentionally interfered with that business relationship by sending more than 100 Cease and Desist Letters (the "Cease and Desist Letter") for the sole purpose of stopping SNS' distribution of its album "Welcome To The 305," which TVT claims would have competed with its distribution of an album entitled "M.I.A.M.I." Both albums contain recordings of the recording artist Armando Perez, professionally known as "Pitbull" ("Perez"). TVT's only defense is that it interfered with justification. This defense is not sustainable as a matter of law for three independent and each dispositive reasons: (1) TVT has overstated its legal rights in the mark "Pitbull," because it does not own and has no protectible interest in said mark; (2) TVT is not entitled to assert a qualified privilege because it did not act to protect a legitimate business interest which is equal to or greater than SNS' interest in the subject matter addressed in the Cease and Desist Letter; and (3) even if TVT was entitled to assert a qualified privilege, it either acted with malice or it did not act in a lawful and proper manner because it knowingly and

intentionally misrepresented its legal rights in the Cease and Desist Letter that was designed to threaten and intimidate the recipients.

<u>TVT HAS NO LEGITIMATE PROTECTIBLE RIGHTS IN PEREZ'S MARK "PITBULL"</u>

In response to the plaintiff's motion for summary judgment, TVT asserts that "Perez granted to TVT exclusive rights to use the 'Pitbull' mark for purposes of advertising and promotion of musical recordings released during the term of the recording agreement." This statement is directly contrary to TVT's admission that it did <u>not</u> receive an assignment of Mr. Perez's trademark rights (A-252). As Magistrate Judge Brown determined, TVT misstates the non-ambiguous clause of its contract with Perez (R & R at Page 20). This is but one example of TVT's repeated overstatement of its rights.

First, TVT's contracts regarding Mr. Perez[1] do not contain any grant of exclusive rights to use the "Pitbull" mark. Rather, TVT's "Recording Agreement" merely provides for a grant to TVT of the exclusive right "to use . . . the names (including any professional names or sobriquets), approved likenesses . . . and approved biographical material of or relating to [Perez] . . . for purposes of advertising and promotion in connection with the making and exploitation of Records hereunder and in TVT's general goodwill advertising." (A-730, paragraph 5.04). Thus, TVT received no license nor assignment of Mr. Perez's service mark or trademark rights, but merely limited permission to use Mr. Perez's professional name "Pitbull." This license is only in connection with the marketing of recordings Mr. Perez makes for TVT, *i.e.*, only in connection with the sale of the M.I.A.M.I. Album and subsequent albums, if any, prepared for TVT under the agreement. (A-84; R & R at P. 20).

---

[1] SNS has argued that these unsigned contracts are illusory and thus enforceable. For purposes of this response, SNS will assume they are binding.

2

Permission to use the artist's name, rather than a license to use the "Pitbull" service mark is in keeping with the respective uses made by each party to TVT's "Recording Agreement." Mr. Perez uses his service mark to identify the source of his entertainment services, while TVT is permitted to use Mr. Perez's professional name to identify the artist whose recordings appear on the records TVT sells.

Second, TVT overstates its rights by implying that it has gained trademark rights through its use of the name "Pitbull" on album covers and in advertising and sale of its Pitbull recordings. Its use of the name, however, serves only to identify the artist, and does not qualify as trademark use. In Re Spirer, 225 USPQ 693 (TTAB 1985) (subject matter that, as used on sound recordings, merely serves to identify the artist or artists whose performance comprises the content of the recording is not registrable as a trademark for the recordings). As noted by the Court of Appeals for the Federal Circuit in In Re Polar Music International AB, 714 F.2d 1567, 1572, 221 USPQ 315, 318 (Fed. Cir. 1983), "just showing the name of the recording group on a record will not by itself enable that name to be registered as a trademark. Where, however, the owner of the mark controls the quality of the goods, and where the name of that recording group has been used numerous times on different records and has therefore come to represent an assurance of quality to the public, the name may be registered as a trademark since it functions as one." Also see, Rick v. Buchansky, 609 F.Supp. 1522 (S.D.N.Y. 1985), Marshack v. Greene, 746 F.2d 927 (2nd Cir. 1984) and Bell v. Streetwise, 640 F.Supp. 575 (D. Mass. 1986) (all holding that only the party that controls the quality of the music can own the mark). TVT has made no showing that would qualify as trademark use.

It should be noted that TVT's use of the name "Pitbull" was permitted by Mr. Perez, but only in connection with the recordings prepared pursuant to TVT's "Recording Agreement" for

3

the recording services of Mr. Perez for a limited time, and did not, by any stretch, grant to TVT overarching, exclusive rights to use the name on all recordings ever made by Mr. Perez. TVT knew full well the limitations on its rights, but chose to make extreme overstatements of its rights for the sole purpose of removing plaintiff's recordings from the market.

Third, TVT claims that it has gained trademark rights by using a "stylized" version artist's name in an Old English font, and by calling it a "logo." It is quite clear from the evidence in this case that the owner of trademark rights in "Pitbull" is Mr. Perez. One cannot take another's trademark and make it his own by simply changing its font or incorporating it into a design or logo. See, e.g., In Re Melville Corp., 18 USPQ2d 1386, 1388 (TTAB 1991); In Re Pollio Dairy Products Corp., 8 USPQ2d 2012, 2015 (TTAB 1988); Sunnen Products Co. v. Sunex International Inc., 1 USPQ2d 1744, 1751 (TTAB 1987); In Re Hester Industries, Inc., 231 USPQ 881, 883, n.6 (TTAB 1986). This is because the rights associated with a mark in standard characters reside in the wording (or other literal element, e.g., letters, numerals, punctuation) and not in any particular display. Thus, Mr. Perez is not limited to any particular depiction of his mark, and has trademark rights in "Pitbull" in any font or format. TVT cannot, by presenting its claimed mark in a special form, distinguish the mark from that already established, owned and properly registered by Mr. Perez.

Further, rather than developing a new trademark, TVT's advertising displaying the artist's name in an old English font served to enhance public recognition of the identity of the artist known as Pitbull. TVT's stylized version of Mr. Perez's mark merely identifies the artist appearing on the recordings TVT sells, and has no trademark significance.

TVT's late and misguided attempt to register its all trademark claims in "Pitbull" serves as a further evidence of TVT's propensity to overstate its rights. One of TVT's applications to

4

register its stylized version of "Pitbull" is in International Class 35, for use in connection with advertising services. TVT has admitted, however, that it offers no advertising services to third parties, and that its advertising activities are limited to the advertising of its own products. (A-255). The other application filed by TVT is in Class 9 for use in connection with musical sound recordings and musical videos featuring the performances of the artist know as "Pitbull." As stated above, however, TVT's use of the name "Pitbull" merely identifies the artist, and does not constitute requisite use to establish trademark rights in TVT.

TVT's lack of any legitimate trademark rights in the mark "Pitbull" is further supported by the cease and desist letter sent by Perez's attorney to TVT, in which Perez states his objections to "TVT's false claims of ownership and unauthorized use of the Pitbull Mark." (Exhibit 8, A-705). The letter states, ". . . [n]owhere in [the TVT Agreement] does [Perez] grant permission to TVT to assert ownership rights in the Pitbull Mark." (A-260). Thus, the true owner of the mark "Pitbull" has repudiated TVT's claim of ownership in the mark. Despite Perez's demand that TVT withdraw its applications to register the mark Pitbull, TVT has not done so and has not responded to Perez's Cease and Desist Letter (A-261).

Accordingly, TVT's assertion of Lanham Act rights, and its threats to enforce its rights, were baseless and were known by TVT to be baseless.

### TVT CANNOT PROPERLY CLAIM IT IS ENTITLED TO A QUALIFIED PRIVILEGE WHICH EXCUSES ITS TORTIOUS CONDUCT

TVT asserts that a qualified privilege excuses its tortious interference. TVT's citation to Seminole Tribe v. Times Publishing, 780 So.2d 316 (Fla. 4th DCA 2001) and Ethyl Corp. v. Balter, 386 So.2d 1220 (Fla. 3rd DCA 1980) does not support TVT's assertion. These cases are distinguishable because TVT had no legitimate, enforceable or protectable legal rights in either

5

SNS' "Welcome To The 305" Album or Perez's mark. TVT could not have acted to protect a legitimate interest in the Pitbull mark because in Paragraph 7(b) of the Boothe/Perez Contract (Exhibit 3), Perez clearly grants Boothe and his licensees the right to use Perez's professional name and mark in connection with the sale and exploitation of the recordings at issue, as well as ownership of those recordings. Finally, TVT does not proffer how its contract with Perez would extinguish the <u>prior</u> grant of rights that Perez made in favor of SNS.

A qualified privilege only exists where "One . . . has a duty or interest in the subject matter to one who has a corresponding duty or interest . . . and the interest of the Defendant must be equal or greater than the Plaintiff's interest in the subject matter." The subject matter here is SNS' album "Welcome To The 305" and use of Perez's mark. TVT has presented no evidence that it has <u>any</u> interest in SNS' album, which Perez recorded pursuant to the Boothe/Perez Contract, let alone, an interest greater than SNS'. TVT has presented no evidence to show it has rights in Perez's mark which are greater than the clear and unambiguous grant to Boothe/SNS in Paragraph 7(b) of the Perez/Boothe Contract.

The Florida Supreme Court committee on standard jury instructions takes a dim view of a defendants ability to even assert a qualified privilege where the tortious interference involves a contract that is not terminable at will, as here. The committee established two separate jury instructions dealing with tortious interference with a business relationship -- M.7.1 and M.7.2. The former is to be used where either the contract interfered with is non-terminable at will or where the Defendant acts for its own monetary advantage (both elements exist here). The committee states "in most such cases there is no justification privilege, therefore, if the interference is intentional it is likewise improper (and only) in certain relatively rare factual circumstances interference with a contract not terminable at will may be justified . . . (actor

6

responsible for welfare or another), (advise as proper or improper interference), (asserting a bona file claim) or (agreement illegal or contrary to public policy), and in these cases, Jury Instruction M.7.2 may be used." 475 So.2d 682, 690 (Fla. 1985) also see Yoder v. Shell Oil, 405 So.2d 743 (2nd DCA 1981).

### TVT ACTED WITH MALICE OR BY IMPROPER MEANS AND CANNOT CLAIM QUALIFIED PRIVILEGE

Even if the privilege is assertible, TVT cannot show its actions qualifies for the privilege. In McCurdy v. J.C. Collis, 508 So.2d 380, 382 (Fla. 1st DCA 1987), the court held the qualified privilege does not exist if the actor acts with express malice or utilizes improper means such as . . . misrepresentations. McCurdy, Id. at 383. Thus, if the Court does find that TVT is entitled to claim a qualified privilege, the Court must nevertheless rule in favor of SNS if either TVT acted with express malice or it used improper means by misrepresenting its legal claims under the Lanham Act. As shown below, the undisputed evidence supports a finding that both circumstances exist and therefore, TVT cannot show it is entitled to a privilege.

From the face of the Cease and Desist Letter, it is evident that TVT acted with malice. Jacquelyn Sussman also admitted that TVT acted with malice when she testified the Cease and Desist Letter was sent with the express intent to harm SNS by causing ADA to cease distribution of the "Welcome To The 305" album. "Proof of malice in fact involves production of evidence from which the jury could conclude that the challenged statement was motivated by ill will and the desire to harm." See McCurdy at 382. Since the circumstances surrounding TVT's sending the Cease and Desist Letter are not in dispute, it is appropriate for this Court to resolve this issue on Summary Judgment. McCurdy at 382.

7

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

However, even if the Court determines that TVT's actions do not rise to the level of express malice, TVT's actions are privileged only if it acted with proper means. McCurdy at 382, KMS Restaurant v. Wendy's Intl., 361 F.3d. 1321 (11th Cir. 2004). "In these circumstances in which there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper. In other words, the privilege does not encompass the purposeful causing a breach of contract." KMS Restaurant at 1327, also see McCurdy at 384. Improper means can include interfering by way of misrepresentation. A representation is fraudulent when to the knowledge of belief of the utterer, it is false in the sense in which it is intended to be understood by its recipient. See Standard Jury Instruction M.7.1 and 7.2. The factors to consider in evaluating if TVT acted improperly are:

1. The nature of the actor's conduct;

2. The actor's motive;

3. The interest of the other with which the actor's conduct interferes;

4. The interest sought to be advanced by the actor;

5. The social interests in protecting the freedom of action of the actor and the contractual interests of the other;

6. The proximity or remoteness of the actor's conduct to the interference; and

7. The relations between the parties.

TVT admits that it knowingly and intentionally sent the Cease and Desist Letter, targeting the recipients as ADA (the company it knew SNS had a distribution agreement with) and customers of ADA (who were likely to buy SNS' album) because TVT's album competed with SNS' album. Before TVT sent the Cease and Desist Letter, it knew (from Allen Jacobi and Pitbull's attorney, Angela Martinez) that SNS had valid contractual rights to: (a) distribute the

8

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

"Welcome To The 305" album; and (b) to use Perez's name and likeness. Thus, factors 1 through 4 fall in favor of SNS.

Factor 5 also favors SNS, as TVT's threats in its Cease and Desist Letter were specific and direct; the letter did not offer an opinion, but threatened each recipient with compensatory damages, treble damages, injunctive relief, interest, attorneys' fees and costs under the Lanham Act.

Immediately upon receiving the letter, each recipient cancelled its business relationship with SNS. As the directly proximate and intended result was achieved, factor 6 favors of SNS. Because TVT admitted that it acted to enhance its own profits from its Pitbull album and, based upon its view that SNS was a competitor, factor 7 falls in favor of SNS.

There are additional equities which favor SNS and which demonstrate that TVT did not act properly. Jacqueline Sussman, a lawyer, knew TVT had no valid claims against ADA under the Lanham Act based upon her knowledge of trademark law and her knowledge of the contracts granting SNS the legal rights to the album. TVT bases its claimed rights upon contracts which not only fail to provide support for TVT's position, but which were known by TVT not to provide the rights it claimed.[2] TVT filed an application to register trademark claims it knew were false and based upon fraudulent statements to the USPTO, in a belated effort to bolster its spurious claims. Finally, the holding in KMS requires the Court find that TVT is not entitled to the privilege merely because TVT induced ADA to breach its written, non-terminable contract with SNS. These facts, together with the specificity of threats contained in the Cease and Desist Letter, demonstrate that TVT did not act in a justified, legal and proper manner. Certainly, at a

---

[2] These are the same unsigned contracts that it is asserted are illusory and unenforceable.

9

minimum, TVT did not possess rights that were greater than SNS' with respect to the "Welcome To The 305" album.

At the very least, TVT admitted it conducted no due diligence to determine if SNS' possessed valid and legal rights in the "Welcome To The 305" album and the rights to use the Pitbull mark before it sent the Cease and Desist Letter (A-242, A-246, A-247). TVT does not attempt to distinguish the holding in McCurdy, which holds a party does not act in a proper manner by making accusatory statements about a defendant without first conducting its own investigation and exercising due diligence to determine the validity of its accusatory statements. See McCurdy at 384.

Finally, TVT does even attempt to rebut or distinguish the case that is most factually identical to the instant case, to wit, Universal City Studios Inc. v. Nintendo Co., 797 F.2d 70 (2nd Cir. 1986), which held a party liable for tortious interference where it sent a Cease and Desist Letter threatening Lanham Act claims knowing it did not possess ownership of the underlying trademark that supported its threatened Lanham Act claims.

### THIS COURT SHOULD NOT DELAY RULING ON THE MOTION UNDER RULE 56(f) BECAUSE PLAINTIFFS HAVE FULLY COMPLIED WITH ALL DISCOVERY REQUESTS PROPOUNDED BY DEFENDANT

On May 19, 2005, the parties jointly submitted its Joint Scheduling Report, in which the parties agreed to complete discovery by November 18, 2005.[3] The only outstanding discovery which is directed to the Plaintiff/Counter-Defendants are the Request for Production of Documents, which is dated November 8, 2005, and for which Plaintiff/Counter-Defendants have now completely satisfied.[4] Defendant claims that it has not fully taken discovery. While this

---

[3] The parties have now submitted a renewed scheduling report extending the discovery cut-off to March 20, 2006.
[4] Plaintiff's actions do not create an issue of contested fact as Plaintiff/Counter-Defendants have timely produced said documents response to that request, but after the date of Manuel Kushner's Affidavit.

10

may be true, Defendant has no one to blame but itself. TVT has not even alleged that it has been unable to obtain documents, depositions nor answers to interrogatories. Thus, TVT's reliance upon Snook v. Trust Co., 859 F.2d 865 (11th Cir. 1988) is misplaced.

## CONCLUSION

Based upon the foregoing, Plaintiff, Slip-N-Slide Records, Inc., requests this Court to grant its Motion for Summary Judgment on the issue of Defendant's liability for tortious interference with its advantageous business relationship and order trial only on the issue of resulting damages.

| | |
|---|---|
| RICHARD C. WOLFE<br>FL Bar No. 0355607<br>WOLFE & GOLDSTEIN, P.A.<br>Counsel for Slip-N-Slide Records, Inc., 305 Music, Inc. and Rudebwoy Entertainment, Inc.<br>100 S.E. Second Street, Suite 3300<br>Miami, Florida 33131<br>Telephone: (305) 381-7115<br>Facsimile: (305) 381-7116 | /s/David M. Rogero/<br>DAVID M. ROGERO<br>FL Bar No. 212172<br>DAVID M. ROGERO P.A.<br>Co-Counsel for Slip-N-Slide Records, Inc., 305, Music, Inc. and Rudebwoy Entertainment, Inc.<br>2600 Douglas Road, Suite 600<br>Coral Gables, Florida 33134 6100<br>Phone: (305) 441-0200<br>Fax: (305) 460-4099 |

11

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

## CERTIFICATE OF SERVICE

I certify that a copy hereof was mailed to Manuel Kushner, Esq., Kay Scholer LLP, 777 South Flagler Drive, Suite 900W, West Palm Beach, Florida 33401, and Rhonda R. Trotter, Esquire, Kaye Scholer LLP, 1999 Avenue of the Stars, Suite 1700, Los Angeles, California 90067, on December 20, 2005.

Richard C. Wolfe, Esq.

H:\Slip 'N Slide\v. TVT\Pldgs\reply to summary judgment (with DMR's changes).doc

12

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116