UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO: 05-21113-CIV-TORRES
CONSENT CASE

SLIP-N-SLIDE RECORDS, INC.,

    Plaintiff,

v.

TVT RECORDS, LLC,

    Defendant.
_____/

TEEVEE TOONS, INC.

    Counterclaimant,

v.

SLIP-N-SLIDE RECORDS, INC.,
RUDEBWOY ENTERTAINMENT,
INC., 305 MUSIC, INC., and DOES 1-20,
inclusive,

    Counter-Defendants.
_____/

## COUNTER-DEFENDANTS' MOTION FOR DIRECTED VERDICT

Counter-Defendants, Slip-N-Slide Records, Inc. ("SNS"), Rudebwoy Entertainment, Inc. ("Rudebwoy"), 305 Music, Inc. ("305"), Theodore Lucas ("Lucas"), Alan Waserstein ("Waserstein") and Robert Henderson ("Henderson"), pursuant to Fed.R.Civ.P. 50, move for a Directed Verdict on the Counter-Plaintiffs, TeeVee Toons, Inc.'s ("TVT") Counterclaims, and state:

## LEGAL STANDARD

A trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. Brady v. Southern R. Co., 320 U.S. 476, 479-480, 88 L. Ed. 239, 64 S. Ct. 232 (1943). "The mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## OVERVIEW

TVT filed two claims under the Lanham Act alleging trademark infringement (15 USC § 1114) and false advertising (15 USC § 1125). Considering all evidence and inferences in a light most favorable to TVT, Counter-Defendants are entitled to a directed verdict in their favor as a matter of law, because TVT has failed to show: (a) it has standing to assert these claims and (b) that it has a protectible interest in the "Pitbull" mark. Additionally, TVT has failed to present sufficient evidence in support of its false advertising claim that (c) there is actual consumer confusion and d) that TVT was likely to suffer damages by SNS' actions. Finally, TVT has not demonstrated any eividence in support of its claims against the individual shareholders.

## UNDISPUTED FACTS

1.   On September 1, 2001, Armando Christian Perez, professionally known as "Pitbull" ("Pitbull"), signed a contract with Julian Boothe ("Boothe") granting him and his licensees the right to own, edit and release 27 recordings (Ex. P1) (hereinafter "Boothe/Pitbull recordings). That Contract also granted Boothe and his licensees the right to use Pitbull's name, image and professional name in connection with the promotion and marketing of the Boothe/Pitbull Recordings.

2

2. On November 15, 2004, Boothe signed a Distribution Agreement with 305 licensing to 305 the rights to the Boothe/Pitbull recordings. (Ex. P2)

3. On February 1, 2005, 305 signed a Distribution Agreement with Slip-N-Slide Records, licensing SNS the right to release and distribute the Boothe/Pitbull Recordings. (Ex. P3)

4. Perez then signed an exclusive recording contract with the Diaz Brothers Music Group (DBMG) who on October 23, 2003 signed a contract with TVT (the Short Form). For purposes of this motion only, Counter-defendants will assume the Long Form is otherwise binding.

5. Pitbull Productions, Inc. ("Pitbull Productions"), a company owned by Perez, filed a registration with the United States Patent and Trademark Office ("USPTO") for the name "Pitbull" which was granted. This gave Perez exclusive use to the name "Pitbull" in any "stylized lettering." (Ex. P6)

6. On April 28, 2003, or one month after TVT sent the Cease and Desist letters, TVT attempted to register the "Pitbull" mark in a stylized form. That registration was rejected by the USPTO which found that TVT's attempted registration was substantially similar to Perez's registration. (Ex. P24, p.6) In rejecting TVT's application, the USPTO noted that Pitbull Productions owned registration of the mark "Pitbull" in <u>all stylized lettering</u>. (Ex. P24, p. 9).

7. Following TVT's attempted registration of the "Pitbull" mark, Perez hired an a patent and trademark attorney, Nicole Paige, who sent a cease and desist letter dated June 29, 2005 to TVT. (Ex. P8). That letter advised TVT that its attempt to register the name "Pitbull" was a violation of Perez's rights and illegal. (Ex. P8). The letter further demanded that TVT cease such activities and stated:

3

On April 28, 2005, Tee Vee Toons, Inc., without any authorization or permission from our client, filed two applications for registration of the Pitbull mark . . . In each of the applications TVT alleges that the application is based upon use by TVT in commerce of the Pitbull mark. We understand this statement to be false and fraudulent . . . we demand that TVT . . . immediately cease and desist any and all unauthorized use of 'Pitbull' . . ." (Ex. P8)

10. Angela Martinez ("Martinez"), Perez's lawyer, testified that Perez has used the Pitbull Mark with same stylized lettering (created by TVT) on t-shirts, promotional materials, and for advertising and touring since 2000.

## MEMORANDUM OF LAW

### I. TVT LACKS STANDING TO PURSUE TRADEMARK INFRINGEMENT CLAIMS

Prior to the reaching the merits of a party's claim, a party must first show it has standing to assert those claims. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585, 143 L. Ed. 2d 760, 119 S. Ct. 1563 (1999). In a trademark infringement action, under 15 U.S.C. § 1114 the holder of the trademark or the exclusive licensee is the proper plaintiff. TVT is neither.

TVT's counterclaim for trademark infringement is based entirely upon its assertion that it owns and has acquired protectible trademark rights in a Pitbull "logo." TVT admits that is has no underlying trademark rights in the word "Pitbull" alone, but argues that through its creation, use and promotion of this "Logo" members of the public have come to associate recordings bearing this logo with the TVT record label. Even assuming these proffered facts to be true, TVT, still has not shown a protectible interest in the Mark. If TVT does not own a protectible interest in the Pitbull trademark, then TVT's trademark claim must fail as a matter of law.

Many cases have held that a party who is neither an owner nor an exclusive licensee of a trademark has no standing to assert Lanham Act claims. *See e.g.* Quabang Rubber Co. v.

Fabiano Sho Co. 567 F.2d 154 (1st Cir. 1977). ("There appears to be no cases where a non-exclusive licensee has been permitted to maintain a trademark infringement suit in absence of the registrant"). BMW of North America v. Automotive Gold Inc. 1996 US Dist. Lexis 22828 (S.D. Fla. 1996) (an agreement which explicitly states that a licensee has no interest in a trademark precludes that licensee from having standing in an action to enforce the trademark). TVT's own long form contract reserves such right exclusively to Perez. (See Ex. D13 ¶ 10.01.2). The contract states:

> You [Pitbull]... shall be the sole owner of said name... and that you shall have authority to grant TVT the right to use said professional name. (Ex. D13, ¶10.01.2)

TVT cannot show it is an exclusive licensee.[1] The Short Form contains no grant of any trademark rights at all in favor of TVT. The Long Form recording contract only references an exclusive license for limited purposes, such as promotion and sale of recordings of Pitbull's performances (Paragraph 5.01) and for web sites (paragraph 5.02 (1)(a). Under Paragraph 10.01 Pitbull reserved unto himself, all trademark rights in his name and for all other purposes not so designated.

Under BMW, *supra*, this clause negates TVT's standing. Various other sections of TVT's Long-Form Agreement likewise recognize the scope and limitations of Perez's license. Both sections 5.04 and 10.01.2 warrant that "Perez shall be the sole owner of his name". Thus, there is nothing in the Long Form Agreement by which TVT received an assignment or exclusive license of trademark rights from Perez. Rather, TVT has received just a license or permission to use, which every attorney who testified in this case (Rick Joseph, Angie Martinez, Al Levine and

---

[1] In fact, Boothe is also a licensee of the Pitbull Mark.

even TVT"S own expert, Elliot Goldman) said was typical of music industry custom and practice. No witness testified that it is the record company who OWNS the artists name.

The unrebutted evidence shows that Perez made three prototypical grants of rights to his recordings: (a) Perez's grant to Luke Records, Inc. for the masters recorded in 2000; (b) Perez's grant to Boothe for the Pitbull/Boothe recordings and (c) Perez's grant to DBMG for the masters created for TVT. Each of those grant of rights merely give the record company the exclusive right to use Perez's name and likeness in connection with the marketing of their master recordings under their agreements. However, in each of those agreements, Perez reserved unto himself complete ownership of his performing name and for all other purposes such as touring, merchandising, commercial endorsements, acting, etc. Indeed, Florida law specifically recognizes that Perez could not, in any event, make an assignment in favor of TVT (or any other record label) with respect to his performing name. *See* M & J Enterprises v. Outler, 717 So. 2d 620, 621 (Fla. 3rd DCA 1998).

Since TVT is not an owner nor an exclusive licensee of the Pitbull trademark, TVT lacks standing to assert any trademark infringement claim.

II.  TVT LACKS A LEGALLY PROTECTIBLE RIGHT IN THE PITBULL MARK

To maintain a trademark infringement or false advertising claim TVT must show that it has a protectible right in the Pitbull mark. TVT has presented no evidence that it owns a registered mark. Further, TVT does not dispute that Perez owns the rights to the Pitbull name. Rather, TVT claims that it has a common law mark, in a stylized version of the Pitbull name, which its marketing department created. Coincidentally, the stylized version claimed by TVT appears merely to be the name "Pitbull" in old English font. ("𝔓𝔦𝔱𝔟𝔲𝔩𝔩"). TVT cannot claim ownership rights in the name Pitbull, in any font or in any stylized written version, which merely

6

states the name "Pitbull". To demonstrate ownership of an unregistered mark, a claimant must demonstrate that it adopted a mark to describe its products or services and that it is the exclusive and only person to use that mark in commerce. *See* Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, (1992) (General principals qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered Mark is entitled to protection under Section 43(a)). Again, TVT can prove neither. As demonstrated above, the mark describes Perez's products and services, not those of TVT. TVT asserts that its efforts have resulted in a "successful compaign to brand Pitbull as an artist" and that it uses the "Pitbull logo" not as a brand for its record label, but as a brand for the artist. None of this evidence can support TVT's claim of ownership as a matter of law. Rather it supports Counter-defendants position that only Perez has protectible rights in the Pitbull mark. By the very evidence that TVT has presented, the "Pitbull Logo" conveys to consumers that the artist appearing on the Pitbull albums it distributes, is Perez.

One cannot take another's trademark and make it his own by simply changing its font or incorporating it into a design or logo as TVT asserts. *See, e.g.*, In re Melville Corp., 18 USPQ2d 1386, 1388 (TTAB 1991); In re Pollio Dairy Products Corp., 8 USPQ2d 2012, 2015 (TTAB 1988); Sunnen Products Co. v. Sunex International Inc., 1 USPQ2d 1744, 1751 (TTAB 1987); In re Hester Industries, Inc., 231 USPQ 881, 883, n.6 (1986). This is because the rights associated with a mark in standard characters reside in the wording (or other literal element, e.g., letters, numerals, punctuation) and not in any particular display. Thus, as the USPTO determined, Perez is not limited to any particular depiction of its mark, and it has exclusive trademark rights in "Pitbull" in any font or styled format. (Ex. P24, p.9).

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

TVT has not shown that it is the exclusive user of the stylized version of the "Pitbull" mark. Angela Martinez's, Mr. Perez's attorney, provided unrebutted testimony that Perez, himself, has used this stylized version of the mark in connection with touring, advertising and on t-shirts. This alone contradicts TVT's necessary showing of exclusive use.

### III. TVT FAILED TO PRESENT EVIDENCE TO SATISFY TWO REQUISITES OF FALSE ADVERTISING: (1) ACTUAL CONSUMER CONFUSION AND (2) ACTUAL HARM

A Plaintiff who alleges a false advertising claim must establish each of the following elements:

1. a false or misleading. a false or misleading statement of fact about a product,

2. a statement which actually deceives or had the capacity to deceive a substantial segment of potential customers,

3. a material deception in that it was likely to influence a consumers purchasing decision, and

4. the plaintiff has been or was likely to have been injured as a proximate result of the statement at issue. 15 U.S.C. §1125(a)(1).

The failure to establish any one of these elements is fatal. Healthport v. Ethex 2004 U.S. Lexis 27520 (W.D. Tex. 2004). TVT's claim for false advertising is predicated upon magazine advertisements and the one sheet. Where a party makes a claim that an advertisement is misleading as opposed to being factually false on its face, that Plaintiff has the added burden to show actual consumer confusion. Hickson Corp. v. Northern Crossarm 357 F.3d 1256 (11th Cir. 2004). In determining whether an advertisement is literally false the court must analyze if the message conveys a specific and measurable claim...in the form of an objective statement of fact as opposed to puffery. Southerland Sod Farms v Stover Seed 108 F.3d 1134 (9th Cir. 1997). TVT claims that these advertisements were misleading because they implied that "Welcome to the

8

305" is a Pitbull album when it was not. TVT did not plead nor did it show that the advertisement contains a "literal" falsity, (i.e. a falsity on its face). Rather, TVT has plead and alleged that the ad created the false impression of the product's origin. In such cases, TVT is obligated to present OBJECTIVE evidence of actual consumer confusion i.e. that at least some consumers were actually confused. Hickson, *supra*; *see also* Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6 (7th Cir. 1992, *supra.*; Lish v. Harper's Mag. Found. 807 F. Supp 1090, 1108 (S.D.N.Y. 1992) (a claim of false designation of origin that distorted the writers unique style by palming it off to the public as his work is a claim based upon a misleading advertisement which mandates plaintiff submit objective evidence in the form of a reader survey or other evidence which established the reaction of customers). *See also* Playboy Ent. v. Dumas 831 F. Supp 295, 317 (S.D. N.Y. 1993) ("a Section 1125 claim based upon misrepresentation of origin requires objective evidence which establishes the reaction of the public to the alterations"). TVT's Amended Counter-Claim does not even allege the advertisements are false. Rather, TVT alleges the advertisement are misleading…it "create the false impression that the infringing album is a new release…whether the infringing album contains material produced with actual creative participation by Perez… as to the affiliation ….with (TVT). (Def. 's Am. Counter-Cl. ¶¶ 40-42).

In Hickson Corp., *supra,* the Eleventh Circuit Court held a party alleging misleading advertising "must present evidence of deception in the form of consumer surveys, market research, expert testimony or other evidence that an ad that creates a false impression is misleading. Since TVT has not pled nor produced any evidence of actual falsity in the form of objective consumer surveys, judgment should be entered in favor of Counter-defendants.

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

VI.   TVT HAS NOT PRESENTED EVIDENCE OF ACTUAL DAMAGES RESULTING FROM THE ADVERTISMENTS

To sustain a claim under 15 U.S.C. § 1125, a Plaintiff must demonstrate a cognizable injury to himself that was proximately caused by Defendant's alleged false statements. Made in the USA Found. V. Phillips Toons, Inc., 365 F. 3d 278 (4th Cir. 2004); Hayes v. JA Rule 2005 US Dist. Lexis 37848 (M.D.N.C. 2005); Kournikova v. General Media Communication Inc. 278 F. Supp. 2d. 1111 (C.D. Cal. 2003) (plaintiff must demonstrate that [it] has sustained or will be likely to sustain a discernibly competitive injury). Each of these cases holds that a Plaintiff who alleges false advertising must demonstrate: 1) that the Plaintiff and Defendant are competitors, 2) that Defendant's commercial activity is related to some specific good or service, 3) that as a direct and proximate result of Defendant's activities, the Plaintiff is likely to suffer economic losses. With respect to this final prong, TVT must again present objective evidence or an actual consumer who mistakenly purchased "Welcome to the 305" instead of a TVT record. TVT has presented no evidence of lost sales, nor any objective evidence of potential lost sales. Since TVT has failed to meet its burden of proof, Counter defendants are entitled to a judgment as a matter of law.

VII.   THERE IS NO EVIDENCE THAT 305'S SHAREHOLDERS DIRECTED THE ACTS WHICH TVT ALLEGES VIOLATES THE LANHAM ACT

Should this Court deny this Motion to TVT's claims against SNS, it should, nevertheless, grant the motion with respect to the individual shareholders. TVT has alleged that the individual shareholders (Wasserstein, Henderson and Lucas) are personally liable because they directed the (alleged) tortious activities of 305 Music. Assuming, *arguendo*, that TVT could show that it had standing that SNS and/or 305 Music violated the Lanham Act, TVT has presented no evidence

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

that these individual shareholders directed such activities. *See* <u>Babbit Electrics, Inc. v. Dynascan Corp.</u>, 38 F.3d 1161, 1183 (11th Cir. 1994) ("If an individual actively and knowingly caused the trademark infringement, he is personally responsible."). The failure of TVT to present any evidence on this issue, mandates a directed verdict in favor of Counter-defendants. <u>Cleveland v Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1192 (11th Cir. 2004).

## CONCLUSION

Based on the foregoing, Counter-Defendant's should be granted a directed verdict on TVT's Counterclaims.

| | |
|---|---|
| WOLFE & GOLDSTEIN, P.A.<br>Counsel for Slip-N-Slide Records, Inc., 305 Music, Inc. and Rudebwoy Entertainment, Inc.<br>100 S.E. Second Street, Suite 3300<br>Miami, Florida 33131<br>Telephone: (305) 381-7115<br>Facsimile: (305) 381-7116 | DAVID M. ROGERO P.A.<br>Co-Counsel for Slip-N-Slide Records, Inc., 305 Music, Inc. and Rudebwoy Entertainment, Inc.<br>2625 Ponce De Leon Blvd., Suite 280<br>Coral Gables, Florida 33134<br>Phone: (305) 441-0200<br>Fax: (305) 460-4099 |
| By:   /s/ Richard C. Wolfe<br>     RICHARD C. WOLFE<br>     FL Bar No. 0355607 | By:   /s/ David M. Rogero<br>     DAVID M. ROGERO<br>     FL Bar No. 212172 |

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        WOLFE & GOLDSTEIN, P.A.
        Counsel for Plaintiff
        100 S.E. Second Street
        Suite 3300
        Miami, Florida 33131
        Telephone: (305) 381-7115
        Facsimile: (305) 381-7116

By: /s/ Richard C. Wolfe
        RICHARD C. WOLFE
        Fla. Bar No: 355607

<u>SERVICE LIST</u>
SLIP-N-SLIDE RECORDS, INC. v. TVT RECORDS, LLC
Case No. 05-21113-CIV-TORRES (CONSENT CASE)
United States District Court, Southern District of Florida

BRIAN D. CAPLAN, ESQ.
bcaplan@labaton.com
JONATHAN J. ROSS, ESQ.
jross@labaton.com
Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, New York  10017
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477
Co-Counsel for Defendants, TVT Records, LLC
Served Via CM/ECF Notice/Email/
Facsimile

STEVEN E. EISENBERG, ESQ.
SEisenberg@FeldmanGale.com
RICHARD GUERRA, ESQ.
RGuerra@FeldmanGale.com
Feldman Gale, P.A.
Miami Center, 19th Floor
201 South Biscayne Blvd.
Miami, Florida  33131
Co-Counsel for Defendants, TVT Records, LLC
Served Via CM/ECF Notice/Email/
Facsimile

H:\Slip 'N Slide\v. TVT\Pldgs\motion for directed verdict.doc

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida  33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116