UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-21113-CIV-TORRES

CONSENT CASE

SLIP-N-SLIDE RECORDS, INC.,

    Plaintiff,

vs.

TVT RECORDS, LLC,

    Defendant.
_____/

TEEVEE TOONS, INC.,

    Counterclaimant,

vs.

SLIP-N-SLIDE RECORDS, INC., *et al.*,

    Counter-Defendants.
_____/

## ORDER DENYING TVT'S MOTION FOR RELIEF FROM JUDGMENT

This matter is before the Court on Defendant TVT's Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b) [D.E. 478], to which Plaintiff responded in opposition [D.E. 481] and TVT replied [D.E. 489]. Upon review of the entire record in the case and based on the reasons that follow, TVT's Motion will be Denied. The Court finds that, in its discretion, there is no basis to grant TVT any relief under Rule 60(b) to set aside the Court's Final Judgment [D.E. 435], as subsequently amended following the denial of TVT's Rule 50 and 59 motions.

1. Upon the jury's verdict for Plaintiff, the Court entered a Final Judgment in Plaintiff's favor and against TVT. That Final Judgment has now been amended upon resolution of TVT's Rule 50 and 59 Motions, and an Amended Final Judgment has now been entered in Plaintiff's favor for $4,579,200.00 together with post-judgment interest.

2. Together with the filing of the Rule 50 and 59 Motions, TVT also filed the pending Motion for Relief from Judgment, pursuant to Fed. R. Civ. P. Rule 60(b). Specifically, TVT argued that newly discovered evidence was discovered after the jury's verdict that warranted relief from the Final Judgment and a new trial under Rule 60(b)(2). TVT also argued that, under Rule 60(b)(3), this same evidence demonstrated that Plaintiff engaged in a fraud upon the Court, warranting entry of judgment for TVT or at minimum a new trial based upon a miscarriage of justice.

3. TVT's arguments are based upon primarily upon the factual allegations of Luther Campbell, a record producer and artist who formerly signed Pitbull before September 1, 2001, and who filed an affidavit in support of TVT's position that claims that "it is [his] belief that the Pitbull vocal recordings appearing on the '305 Album' at issue in this litigation are the property of Luke Records" and that Julian Boothe "never had, and does not have, any rights to use, license, or exploit in any manner." Aff. Luther Campbell ¶5 [D.E. 489 Exh. 2]. Although this case has been publicly known for some time, Mr. Campbell claims that he only gained this "belief" when he was reading the newspaper and the articles about the jury's verdict in the case. He claims that only after reading these articles after the jury's verdict did this "catch [his] eye" based on his prior relationship with Pitbull, as well as Julian Boothe who worked for Mr. Campbell's record company before becoming affiliated with Plaintiff. Curious as to the facts involved, Mr. Campbell states that he then contacted TVT's President, Steve Gottlieb, who in turn provided Mr. Campbell with exhibits from the case and the recordings involved, from which Mr.

Campbell deduced that the recordings at issue in this case actually were created during a period of time when Pitbull was working for Mr. Campbell. Hence Mr. Campbell's belief that he owned the rights to the album, not Julian Boothe.

4.  TVT also relies upon the opinion of a music expert that reviewed the original multi-track recordings for the Plaintiff's Pitbull album. Lawrence Ferrara was recently asked to review those recordings, which are digital files from the "ProTools" recording software program. These are the same ProTools files that were the subject of much discovery during the course of the case and that TVT obtained during that process. Mr. Ferrara went back to review those same files to determine when the recordings were originally created, in order to corroborate Mr. Campbell's recent revelation. Mr. Ferrara concluded that seven of the eight tracks on the Pitbull album were first created before September 18, 2001, and one even going back as far as April 2001. Mr. Ferrara conceded, however, that he cannot determine from these files whether the recording process was completed on the day of the commencement of the recordings, whether "substantial" work had been done prior to that date, or whether changes, additions or substractions may have been made to the files subsequent to the initial commencement. [D.E. 478-3 at 2 (Aff. of Lawrence Ferrara)].

5.  Plaintiff responded to this alleged newly discovered evidence with several affidavits of its own, including that of Julian Boothe who challenged Mr. Campbell's claims. Specifically, Booth attests that any recordings that Pitbull made when Pitbull was under contract with Mr. Campbell's company were not recording digitally but, instead, were recorded on two-inch recording tape. Boothe turned over that tape to Mr. Campbell when Booth left his employment in the summer of 2001. Additionally, Booth says that the Ferrara affidavit is correct that some the digital recordings were created before September 2001, because Booth utilized musical beds that were already created by the

producer, Steve Obas, on his ProTools system. Obas had agreed that Boothe could use those beds in connection with the Pitbull recordings. But Boothe claims that Pitbull never made any recordings that were added to those files before the contract between Boothe and Pitbull was signed in September 2001. [D.E. 481-2].

6.  Steve Obas provided an affidavit that corroborated Boothe's version of the events. He attested that none of the Pitbull album's recordings were made at Luther Campbell's studio and that Pitbull's tracks were laid on top of musical beds that belonged to Obas and were created before September 2001. He adds that he has personal knowledge of when Pitbull recorded the tracks beceause he was present during all the recordings. [D.E. 481-2].

7.  Mr. Obas's affidavit also adds that he was deposed at length about the creation of these musical tracks by TVT in this case, including the particular ProTools files in question, how and when they were created, and during which the ProTools files were examined by TVT and its expert witness.

8.  From all this, TVT concludes that the judgment should be vacated under Rule 60(b) based upon newly discovered evidence that undermines the jury's verdict because Mr. Campbell never actually owned the Pitbull recordings, not Boothe/Slip-n-Slide Records, and that a fraud on the court has been perpetrated in this case requiring a new trial. Plaintiff argues in opposition that TVT's theory is wholly concocted by an incredible source, that it is not true, and that in any event nothing raised in the Rule 60(b) motion could constitute newly discovered evidence to vacate the judgment.

9.  To succeed on a motion based upon newly discovered evidence under Rule 60(b)(2), TVT must meet a five-part test: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence

must be material; and (5) the evidence must be such that a new trial would probably produce a new result. *Waddell v. Hemerson,* 329 F.3d 1300, 1309 (11th Cir.2003) (citing *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1316 (11th Cir.2000)); *Scutieri v. Paige,* 808 F.2d 785, 793 (11th Cir. 1987). Because relief under Rule 60(b)(2) is extraordinary, these requirements must be strictly met. *Toole,* 235 F.3d at 1316. And, the evidence of due diligence must be "clear and convincing," and the movant must act with the diligence of a "prudent person." *Harduvel v. General Dynamics Corp.,* 801 F. Supp. 597, 605 (M.D. Fla. 1992).

10. To obtain relief from a final judgment based upon fraud under Rule 60(b)(3), TVT must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct. TVT must also demonstrate that the conduct prevented them from fully presenting its case. *Waddell,* 329 F.3d at 1309 (citing *Frederick v. Kirby Tankships, Inc.,* 205 F.3d 1277, 1287 (11th Cir. 2000)).

11. The predicate question, then, is whether the Luther Campbell story is truly newly discovered evidence. The answer is clearly no. "Unexcused failure to produce the relevant evidence at the original trial can be sufficient, without more, to warrant denial of a rule 60(b) motion." *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 391 (5th Cir. 1977). Evidence cannot be "newly discovered" under Rule 60 if it is in the possession of the moving party or that party's attorney prior to the entry of judgment. *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir. 1987)) (citing *United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir. 1983)).

12. Here, the existence of the Luther Campbell relationship with Pitbull and Julian Boothe was well known. The existence of the ProTools files was well known; they were produced to TVT and extensively reviewed in discovery. The existence of Steve Obas

as producer of the Pitbull album was well known to TVT, as it deposed Mr. Obas indepthly.  All these facts, central to the Rule 60 motion, were well known to TVT prior to the trial.  And, most significantly, TVT deposed Pitbull himself (but failed to call him as a witness at trial).  Pitbull's testimony – corroborating his recordings of his tracks for Julian Boothe under the Boothe September 1991 contract – was also well known to TVT.

13.     TVT thus had access to all the information that it now relies upon to support its Rule 60 motion.  How then can the evidence be newly discovered?  TVT answers that question with Luther Campbell – that he did not recall his version of events until after he learned of the lawsuit from the newspapers following the jury's verdict.  Before Mr. Campbell's *sua sponte* inquiry, TVT claims, TVT had no reason to delve into the dates when the ProTools files were actually recorded or to challenge Boothe and Plaintiff's ownership to the recordings.  Yet, TVT clearly could have inquired with Campbell directly as to his knowledge of the Pitbull recordings or his relationship with Boothe and Plaintiff long before the trial.  Campbell was an important player in the story in that it was his relationship with the Boothe and Pitbull that generated the recordings in question.  Clearly, TVT had ample reason to inquire or even depose Campbell during discovery to gather all facts that he knew about Boothe.  Perhaps, Mr. Campbell – upon being asked those questions – could have had his memory jogged then and revealed to TVT in a timely manner as to his recollection of ownership to the Pitbull recordings.  TVT failed to do so.  By definition, therefore, Campbell's revelation is not truly "newly discovered evidence" because a prudent reasonable person would have made those inquiries, at least informally, prior to trial.[1]

---

[1]     The only thing "newly discovered" about this case is Mr. Campbell's interest in this litigation.  Frankly, the existence of the Pitbull/Slip-n-Slide/TVT dispute was well known in the music industry long before the litigation was filed.  The existence of the litigation was also widely known and discussed in trade magazines, music websites,

14. That is especially the case here where TVT was *already* challenging Plaintiff's title ownership to the recordings based on the ambiguous Boothe assignment of rights. TVT clearly could have, but did not, pursue reasons why Plaintiff may not have held title to the recordings.

15. TVT's argument also falls flat when one considers that TVT knew during the course of discovery that the file creation dates on the ProTools files predated September 2001. The fact that TVT or its expert did not ask why that was the case or, if they did, why TVT did not ask others – like Luther Campbell – to verify Boothe's and Obas's testimony, is not at all clear from TVT's motion.

16. Moreover, TVT never explains why it has standing to raise this issue. This version of events really only presents, at best, a civil dispute between Campbell and Plaintiff as to the rights to the proceeds from the recordings (to the extent a statute of limitations does not already bar those claims). It is undisputed that TVT was unaware of the existence of this ownership dispute at the time that it sought to scuttle distribution of the album through its cease and desist letters. Why, then, would an ownership dispute between Campbell and Plaintiff relieve TVT of responsibility over its tortious conduct? TVT's motion fails to show why the outcome of that dispute is truly material to this case.

17. But even if TVT did have standing for argument's sake, TVT has failed to meet its heavy burden of showing that it has newly discovered evidence to present at a new trial that could not have been discovered by a reasonable person prior to the filing of its motion.

---

especially those in the hip-hop/rap genre, as any simple Google search will disclose. Thus, Mr. Campbell immediately casts doubt on his own sincerity or credibility when his affidavit claims that he only learned of this case *after* the jury's verdict was publicized. Perhaps the size of the verdict was what jogged his memory. But because the pending motion is being denied on other grounds, there will be no need to delve into Mr. Campbell's credibility on this issue one way or the other.

18. Moreover, TVT has also failed to meet its burden of showing that the proffered evidence is material; namely, that the evidence would make any difference to the outcome. The theory espoused by the motion – that Pitbull recorded his music tracks before September 2001 – is simply not credible. *See, e.g., Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 1000 (5th Cir. 2001) (self-evident that Rule 60(b) requires that newly discovered evidence be admissible and credible). We say that because TVT's expert quite significantly limited his testimony. He cannot say what was added to or deleted from the recordings. He can only say, and Plaintiff concedes, that the files on the ProTools system were created before September 2001. A third-party witness who has no dog in this hunt, Steve Obas, explained why that was the case. He used recordings that belonged to him as a musical bed for Pitbull's tracks. That certainly explains why the file creation date pre-dated September 2001. Thus, the motion's factual underpinning is based on Mr. Campbell's affidavit. But Mr. Campbell's speculative belief, garnered six years later, standing alone, cannot compel the Court to find that TVT has presented admissible and credible evidence that could change the outcome in a new trial.

19. The Court chooses not to exercise its discretion by reopening this well and exhaustively tried case on the strength of Mr. Campbell's speculative testimony. Therefore, TVT has failed to meet its burden under Rule 60(b)(2). Similarly, TVT cannot succeed on its motion that claims, under Rule 60(b)(3), that a fraud on the Court has been perpetrated. The Court finds, on this record, to the contrary. The jury's verdict is sound, the trial was fair, and the outcome is well within the limits of Federal and Florida law. No clear and convincing evidence of a fraud has been demonstrated on this record.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

TVT's Rule Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b) is **DENIED** in its entirety.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of November, 2007.

_____
EDWIN G. TORRES
United States Magistrate Judge

Case 1:05-cv-21113-EGT   Document 540   Entered on FLSD Docket 11/28/2007   Page 9 of 9